**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

---

**MR. ACHILLE KIYANI,**

                *Petitioner*,

       v.

**MR. JOSEPH FREDEN,**
       **in his official capacity as Deputy**
       **Field Office Director, Buffalo**
       **Field Office, U.S. Immigration &**
       **Customs Enforcement;**

                *Respondent.*

**Civil Action No. 25-cv-6180**

**VERIFIED PETITION FOR
WRIT OF HABEAS CORPUS
AND INCORPORATED
MEMORANDUM OF LAW**

*Oral Argument Requested*

---

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...................................................4

**THE PARTIES** ...................................................................4

**CUSTODY** ........................................................................5

**JURISDICTION & VENUE** ...................................................5

   I.   SUBJECT MATTER JURISDICTION ............................................ 5

   II.  PERSONAL JURISDICTION ...................................................... 5

   III. VENUE .......................................................................... 6

**STATEMENT OF FACTS** ......................................................6

   I.   MR. KIYANI'S MOST RECENT ENTRY TO THE U.S.; INITIATION OF THE CREDIBLE FEAR PROCESS UNDER THE INA ............................... 6

   II.  DHS SUBJECTS MR. KIYANI TO SOMETHING ENTIRELY DIFFERENT ............. 7

   III. DHS REFUSES TO GIVE HIM A CREDIBLE FEAR INTERVIEW, OR ACCESS HIS STATUTORY PROCEDURAL RIGHTS; PROVIDES SHIFTING EXPLANATIONS FOR THEIR DETENTION AUTHORITY ....................................... 8

   IV. DHS HAS ATTEMPTED TO REMOVE MR. KIYANU TO THIRD COUNTRIES WITHOUT AFFORDING HIM THE OPPORTUNITY TO RESPOND ................. 10

**ARGUMENT** ...................................................................10

   I.   MR. KIYANI MUST BE RELEASED UNLESS THE GOVERNMENT PROVES IT HAS THE LAWFUL AUTHORITY TO DETAIN HIM ................................. 10

   II.  MR. KIYANI HAS REASON TO BELIEVE HE IS BEING HELD UNLAWFULLY. IT IS FOR THE GOVERNMENT TO PROVE OTHERWISE ........................... 13

      A.   What The Law Required ........................................... 14

      B.   What Mr. Kiyani *Believes* The Government Is Trying To Do ............... 15

   III. DHS APPEARS TO BE SEEKING MR. KIYANI'S REMOVAL (1) ON THE BASIS OF A LEGALLY INVALID REMOVAL ORDER, (2) CONTRARY TO THEIR OWN PROCEDURES AND (3) IN DIRECT VIOLATION OF AN APPLICABLE TRO ...... 16

IV.  8 U.S.C. § 1252 ***PROVIDES*** THE COURT JURISDICTION IN THIS CASE .............. 17

**CLAIMS FOR RELIEF** ..................................................................................................**18**

**COUNT 1: PETITION FOR WRIT OF HABEAS CORPUS TO ESTABLISH WHETHER MR. KIYANI'S DETENTION IS LAWFUL** ..................................................................**18**

**COUNT 2: SUBSTANTIVE AND PROCEDURAL DUE PROCESS REQUIRES A STAY OF REMOVAL UNTIL THE GOVERNMENT PROVES IT HAS PROVIDED MR. KIYANI WITH THE PROCEDURAL RIGHTS HE IS DUE UNDER THE STATUTE AND REGULATIONS** ..........................................................................................................**19**

**PRAYER FOR RELIEF** ..................................................................................................**19**

**VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242** ......................................................................................................**21**

## PRELIMINARY STATEMENT

1.      Petitioner Mr. Achille Kiyani ("Mr. Kiyani") is being held in custody by the Department of Homeland Security ("DHS", or "Government"), but despite repeated requests by his counsel, the Government has refused to provide clarity on the lawful basis they purport to hold him.

2.      Mr. Kiyani _believes_ the government is purporting to hold him unlawfully - pursuant to a flagrant misreading of an executive order and / or in contravention of the applicable statutes. But until the Government is forced to state the basis under which they purport to hold him, they are actively - and purposefully - preventing him from making that claim with sufficient particularity.

3.      For this reason, Mr. Kiyani comes before this Court to invoke his ancient right for a writ of habeas corpus: to be brought before the Court and have this Court determine whether he is rightfully in confinement or not. In the meantime, he seeks a stay of removal - which this court is statutorily empowered to grant as part of its determination as to whether he has in fact been ordered removed in the first place.

## THE PARTIES

4.      Petitioner Mr. Achille KIYANI, ("Mr. Kiyani") is detained in the custody of ICE. As of the filing of this petition, he is being held at the Buffalo Federal Detention Facility, Batavia, New York. His custody and the governmental actions related to his removal are likewise controlled by the Buffalo Field office, which is located within this judicial district.

5.      Respondent Joseph Freden is the Buffalo, NY Deputy Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement. Respondent Freden's office is at either the Buffalo Federal Detention Facility, Batavia New York, or 250

Delaware Avenue, Floor 7, Buffalo, NY 14202 - both within this judicial district. He may alternatively be considered to be Petitioner's immediate custodian.

## CUSTODY

6.     Petitioner is in the physical custody of Respondent and U.S. Immigration and Customs Enforcement ("ICE") at the Buffalo Federal Detention Facility ("BFDF") at 4250 Federal Drive, Batavia, New York 14020.  The Deportation Officer responsible for his case is stationed at BFDF. The Petitioner is under the direct care, custody and control of Respondents and their agents.

## JURISDICTION & VENUE

I.    SUBJECT MATTER JURISDICTION

7.     This action arises under the Constitution of the United States, and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104 - 208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.

8.     This Court has jurisdiction under 28 U.S.C, § 2241, Art. I, § 9, el. 2 of the Constitution of the United States (the Suspension Clause) and 28 U.S.C. § 1331, as Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C. § 702, the All Writs Act, 28 U.S.C. § 1651 and the Court's equitable habeas authority.

II.    PERSONAL JURISDICTION

9.     This Court has personal jurisdiction over Mr. Kiyani's immediate custodian (who is physically within the district).

III.    VENUE

10.    Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S.484, 493-500 (1973), venue lies in the United States District Court for the Western District of New York, the judicial district in which Petitioner is being detained. Petitioner is being detained at the Buffalo Federal Detention Facility, which is under the jurisdiction of the ICE Field Office of Buffalo, New York, which encompasses the area where Petitioner is being detained, pursuant to 28 U.S.C. § 1391.

**STATEMENT OF FACTS**

I.    MR. KIYANI'S MOST RECENT ENTRY TO THE U.S.; INITIATION OF THE CREDIBLE FEAR PROCESS UNDER THE INA

11.    Mr. Kiyani is a native and citizen of the Democratic Republic of the Congo, who entered the United States on or about February 20, 2025 through the Northern Border - having entered from Canada.

12.    Upon his entry into the United States, Mr. Kiyani was encountered by Customs and Border Protection and later transferred to the custody of ICE at BFDF.

13.    Mr. Kiyani's immigration attorney, Siana McLean ("Ms. McLean" or "Counsel") met with him on February 25, 2025 to discuss his detention at BFDF. During this meeting Mr. Kiyani advised Ms. McLean that he was afraid of returning to his native country and that he had advised the officers at BFDF of this fact.

14.    Mr. Kiyani advised that he was served with a document entitled "Information About Credible Fear Interview" on February 24, 2025. See Exhibit 1 ("CFI Notice"). This document outlined a full process for an interview with an asylum officer - and confirmed in relevant part that:

> If the asylum officer determines that you have a credible fear of persecution or torture, you will *either* receive a charging document for a hearing in immigration

court *or* you will be scheduled for an Asylum Merits Interview with a USCIS asylum officer. **At the immigration court hearing or USCIS Asylum Merits Interview, the immigration judge or asylum officer will determine whether to grant you asylum or whether you are eligible for other protection from removal.** You will receive information about the dale, time, and location of1his hearing or interview.

(emphasis added) *Id*. at pp.2-3

15.     This document also <u>explicitly</u> confirmed that that the government was exercising the following legal authorities:

The acquisition, preservation, and exchange of information in connection with a credible fear interview and any potential associated asylum adjudication is collected under the Immigration and Nationality Act sections 103, 208, 235 and 241(b)(3), and 8 CFR sections 103, 208, 235, and 1208.

Purpose: The primary purpose for providing the requested information is to determine eligibility for asylum in the United States or other protection from removal.

*Id*. at p.3

II.     <u>DHS SUBJECTS MR. KIYANI TO SOMETHING ENTIRELY DIFFERENT</u>

16.     On February 26, 2025, Mr. Kiyani was interviewed by an asylum officer. After the interview, however, he was not provided with the results of a credible fear interview - which again, is a term of art defined by both statute and regulation. Instead, he was served with a document entitled "Convention Against Torture Assessment Notice for Alien(s) Whose Entry Has Been Suspended and/or Restricted Pursuant to INA §§ 212(f) and 212(a) (Rev. 01/31/2025)". See Exhibit 2 ("DHS CAT Assessment").

17.     The DHS CAT Assessment noted that Mr. Kiyani: "**established** that it was more likely than not that he would be tortured in DEMOCRATIC REPUBLIC OF THE CONGO." (emphasis in original), *Ibid*.

18.     Mr. Kiyani was provided no further instructions after receiving this document and was also not provided with a record of the interview.

19.     On March 3, 2025, Mr. Kiyani's immigration attorney emailed ICE at BFDF and requested that he be afforded a full credible fear interview - to consider persecution and not just torture. See Exhibit 3, Declaration of Mr. Kiyani's Immigration Attorney Siana McLean (McLean Dec.") § 3.

III.    DHS REFUSES TO GIVE HIM A CREDIBLE FEAR INTERVIEW, OR ACCESS HIS STATUTORY PROCEDURAL RIGHTS; PROVIDES SHIFTING EXPLANATIONS FOR THEIR DETENTION AUTHORITY

20.     In response to counsel's request for an *actual* credible fear interview, DHS inexplicably responded that "[w]e are currently waiting on response from Canada." McLean Dec. § 5.

21.     Counsel provide a pellucid explanation to DHS of the statutory rights Mr. Kiyani was entitled to as part of the credible fear process, and highlighted that he had not yet received them. McLean Dec §§ 3, 4, 6. DHS responded on March 5, 2025 that "[Mr. Kiyani] illegally entered the U.S. from Canada. Under the cred fear process we are reaching out to them to see if they will accept him back." *Id*. at § 7. Counsel immediately explained that the credible fear process does ***not***, in fact, allow for return to Canada - a country Mr. Kiyani has no status in. *Id.* at § 8.

22.     DHS next stated that "Mr. Kiyani was given a Convention Against Torture Assessment by USCIS as an alien whose entry has been suspended and/or restricted pursuant to INA 212(f) and 215(a). USCIS determined that Mr. Kiyani established that it is more likely than not that he will be tortured in The Congo. Mr. Kiyani is being processed for expulsion to a third country and will not be placed in removal proceedings at this time." *Id*. at § 9.

23.     Counsel responded with several emails reiterating that Mr. Kiyani was entitled to his statutory rights to due process found within the credible fear process, McLean Dec. §§ 10-12, including highlighting that (1) an Executive Order, (2) explicitly related to entries across the

United States' southern border, could not supplant (3) the statutory rights of (4) someone who crossed the northern border. *Ibid*.

24.     Supervisory Detention and Deportation Officer Andrew Olivieri responded that "The Presidential Proclamation [explicitly related to a supposed "invasion across the **southern border**"[1]] also applies to the **northern** border. As a result, Mr. Kiyani will continue to be processed for expulsion to a third country." (emphasis added) McLean Dec. § 13

25.     In response to further emails from Counsel seeking to clarify the government's detention authority, McLean Dec. §§ 14, 15, DHS responded that (1) they were holding Mr. Kiyani pending potential removal to a third country, (2) he would have an opportunity to claim a fear of removal to that country, but (3) he had no right to appear in front of an immigration judge - notwithstanding the fact that DHS had accepted it is more likely than not he would be tortured if returned to the Democratic Republic of Congo. McLean Dec. §16:

> Good morning, Your request was previously answered. As your client received a positive adjudication to Convention Against Torture (CAT), we are requesting Canada look in to the possibility of his return back to Canada (from which he was encountered). Upon their decision, we will look into alternative countries of removal, to which your client may claim fear of removal to. I have attached USCIS's CAT decision as requested. Your client is not eligible to appear in front of an Immigration Judge. I hope this clarifies things.

26.     Counsel again then explicitly asked for confirmation of whether Mr. Kiyani had been subject to an expedited order of removal - and to otherwise clarify what legal status they believed Mr. Kiyani had. McLean Dec. § 17. DHS responded as follows:

> Good afternoon,

---

[1]   Executive Order Dated Jan 20, 2025, 90 FR 8333, Guaranteeing The States Protection Against Invasion, Section 1 ("[T]he entry into the United States on or after the date of this order of aliens engaged in the invasion **across the southern border** is detrimental to the interests of the United States. I therefore direct that entry into the United States **of such aliens** be suspended until I issue a finding that the invasion at the **southern border** has ceased." (emphasis added))

I apologize for the delay in response. Your client was served an executed Form I-860. As a 212(f) case he is no longer under removal but expulsion from the United States. Thus, the expulsion still remains in effect and he is only given a CAT interview for purposes of removal. He is not subject to an IJ review of this fear finding. Seeing as he was given positive CAT to Congo, we will continue to look for other countries for removal. He will be afforded the chance to make a separate CAT claim for every country that is considered. I am currently awaiting a decision from Canada at this time. I hope this satisfies your inquiry. Any further inquires will reference our past responses.

McLean Dec. § 18

27.    Counsel followed up with ICE on March 28, 2025 and April 1, 2025 but there has been no further information from ICE. McLean Dec. §§ 19, 20.

## IV.    DHS HAS ATTEMPTED TO REMOVE MR. KIYANU TO THIRD COUNTRIES WITHOUT AFFORDING HIM THE OPPORTUNITY TO RESPOND

28.    Mrs. McLean has been advised by Mr. Kiyani through the detainee tablet that he has access to in BFDF, he has been able to see that Canada has declined to accept him and so has Panama.

29.    Mr. Kiyani was not given a CAT interview for removal to Panama.

30.    Mr. Kiyani has now indicated that there is an attempt to remove him to El Salvador.

31.    Mr. Kiyani has not been given a CAT interview for El Salvador.

32.    Mr. Kiyani remains detained at BFDF with no indication from ICE as to if there will be any future progress of his case.

## ARGUMENT

## I.    MR. KIYANI MUST BE RELEASED UNLESS THE GOVERNMENT PROVES IT HAS THE LAWFUL AUTHORITY TO DETAIN HIM

33.    Counsel for Mr. Kiyani has repeatedly asked DHS to state the legal basis upon which it is holding him. DHS has provided a wide range of answers, some of which have no basis in law, some which do not make sense and yet others which contradict earlier purported bases.

34.  <u>First</u>, DHS has acknowledged that he was entitled to a credible fear interview - and the statutory process associated with it - which is defined by statute and regulation. Exh 1. But despite acknowledging his entitlement to the credible fear interview process (with its associated custody regime - on which see below in Section II.A), DHS provided Mr. Kiyani - without any notice - a *sui generis* interview which did not comply with its legal obligations. Exh 2.

35.  <u>Second</u>, DHS determined that it is more likely than not that Mr. Kiyani would be tortured in his native Democratic Republic of Congo, Exh 2 - yet asserted the authority to detain him while seeking his removal to any country it picks (all while denying his right to be referred to either immigration court or a USCIS Asylum Merits Interview for consideration of his asylum claim). McLean Dec. § 16.

36.  <u>Third</u>, DHS asserted that (1) an Executive Order, (2) explicitly related to entries across the United States' **southern** border, overrides (3) Mr. Kiyani's statutory rights to the credible fear process, despite (4) Mr. Kiyani *never having crossed the southern border*. McLean Dec. § 13.

37.  <u>Fourth</u>, DHS purports to have the right to 'expel' Mr. Kiyani. McLean Dec. § 9, 13, 18. But in attempting to explain that right, DHS provided a nonsensical hodgepodge of legal phraseology. *Id*. at § 18 ("Your client was served an executed Form I-860. As a 212(f) case he is no longer under removal but expulsion from the United States. Thus, the expulsion still remains in effect and he is only given a CAT interview for purposes of removal."). Parsing this purported justification for Mr. Kiyani's detention is critical, because it highlights the inability of the government to articulate its authority. For example:

a. A form I-860 is a "Notice and Order of Expedited Removal".[2] It is explicitly limited to exercising DHS' authority under INA 235(b); 8 U.S.C. § 1225(b). This form <u>only</u> allows for a finding of inadmissibility under a small sub-set of the grounds of inadmissibility [3] - none of which are INA 212(f); 8 U.S.C. § 1182(f). If that form was properly used - as alleged by DHS - then upon its issuance, Mr. Kiyani was and is entitled to the statutory processes found in INA 235(b); 8 U.S.C. § 1225(b), namely (1) a credible fear interview, 8 U.S.C. § 1225(b)(1)(B)(v), and (2) if successful, further review of his claim for asylum. 8 U.S.C. § 1225(b)(1)(B)(ii).

b. The message describes Mr. Kiyani as a "212(f) case". But Mr. Kiyani has never been (1) served any document charging with inadmissibility pursuant to INA 212(f); 8 U.S.C. § 1182(f) - nor has he (2) been served an order of removal stating he has been found inadmissible pursuant to that statute. In fact, despite <u>explicit</u> requests for copies of any applicable removal orders, McLean Dec. § 17, DHS has thus far refused to provide one.

c. "Expulsion" appears in the Immigration and Nationality Act. *See, e.g.* 8 U.S.C. § 1533(d) (related to the removal court procedure of alleged non-citizen ***terrorists***); § 1357(a)(2) and (4) (relating to the powers of immigration officers and employees to undertake a warrantless arrest related to "expulsion" powers of the government). And this term was utilized in a *previous* legal regime <u>which has since been repealed</u>. *See, e.g., Siu Fung Luk v. Rosenberg*, 409 F.2d 555, 558 (9th Cir. 1969) ("[A]ppellant's parole into the United States did not constitute an 'entry' into the United States within the meaning of the Immigration and Nationality Act, so as to make him eligible for expulsion rather than exclusion proceedings.") But none of these

---

[2]  See, Exhibit 4 - Example form I-860, available from Immigration and Customs Enforcement at https://www.ice.gov/doclib/detention/checkin/ER_I_860.pdf. Last accessed Apr. 2, 2025.

[3]  Namely 8 U.S.C. § 1182(a)(6)(C)(i) (relating to misrepresentation), § (a)(6)(C)(ii (false claim to citizenship) § (a)(7)(A)(i)(I) (failure to have valid entry documents), § (a)(7)(A)(i)(II) (invalid visa), § (a)(7)(B)(i)(I) (valid passport requirement) and/or § (a)(7)(B)(i)(II) (valid visa requirement).

terms of art apply to Mr. Kiyani - and DHS is thus purporting to have authority to 'expel' him, when he is instead subject to removal. The difference is no mere semantic pedantry: removal entails statutory rights of due process laid out in the *current* Immigration and Nationality Act, whereas expulsion does not apply to Mr. Kiyani.

38.     This uncertainty and the shifting justification of its detention authority by DHS - **by itself** - establishes a right to the ancient writ. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117, 140 S. Ct. 1959, 1969, 207 L. Ed. 2d 427 (2020) ("Habeas, […] is the appropriate remedy to ascertain ... whether any person is rightfully in confinement or not.") (internal citations omitted).

39.     This is true whether under this Court's statutory jurisdiction under 28 U.S.C. § 2241, *or* the Suspension Clause of the Constitution (should any statutory provision purport to strip jurisdiction). Art. I, § 9, el. 2 of the Constitution of the United States.

40.     DHS must be forced to describe with particularity why it believes it has the legal right to detain Mr. Kiyani: if it does not, this Court must issue the writ forthwith.

II.     MR. KIYANI HAS REASON TO BELIEVE HE IS BEING HELD UNLAWFULLY. IT IS FOR THE GOVERNMENT TO PROVE OTHERWISE

41.     Based on the shifting and contradictory information DHS has provided, Mr. Kiyani is alleged to have entered the U.S. without inspection and been charged as subject to expedited removal pursuant to 8 USC 1225(b). What happened thereafter has been withheld from Mr. Kiyani and his counsel - despite repeated requests to state the lawful basis of detention. In the interests of transparency, Mr. Kiyani sets out what he believes *should* have happened under the law, as compared to what he believes *did* happen:

A.   <u>What The Law Required</u>

42.   As a non-citizen with no status who entered the country without inspection and was immediately apprehended, Mr. Kiyani was an 'arriving alien', ***<u>initially</u>*** subject to expedited removal under 8 U.S.C. § 1225(b). Specifically:

a.   Mr. Kiyani is not a native or citizen of a country in the Western Hemisphere and did not arrive by aircraft (so 8 U.S.C. § 1225(b)(F) does not apply);

b.   Mr. Kiyani is a "certain other alien[]" under 8 U.S.C. § 1225(b)(1)(A)(iii), because he is not "described in subparagraph (F)" (see prior bullet point), had "not been admitted or paroled into the United States" and did not "affirmatively show that [he] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph". 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

c.   As a result, DHS ***<u>initially</u>*** had lawful authority to order him removed under 8 U.S.C. § 1225(b)(1)(A)(i) and detain him either pursuant to 8 U.S.C. § 1231 (relating to detention and removal of aliens ordered removed.

d.   ***<u>However,</u>*** Mr. Kiyani conveyed to DHS his credible fear of persecution under 8 U.S.C. § 1225(b)(1)(B)(v) - as acknowledged by DHS when they referred him to an asylum officer for an interview. See, Exhibit 1. Upon conveying this fear, DHS was required to comply with the <u>statutory</u> requirements to refer him for a credible fear interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(i). ("[T]he officer ***shall*** refer the alien for an interview by an asylum officer under subparagraph (B)")

e.   The referral for a credible fear interview had two important <u>statutory</u> implications:

i.  Until such time as the credible fear interview process is complete, it prevents removal, 8 U.S.C. § 1225(b)(1)(A)(i) ("the officer shall order the alien removed from the United States without further hearing or review **unless** the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." (emphasis added)); and

ii.  Upon conveying his fear of persecution, detention authority immediately switched from 8 U.S.C. § 1231 (relating to aliens ordered removed) to 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

43.  If an asylum officer believes that Mr. Kiyani has a credible fear, by statute, he shall be detained "for further consideration of the application for asylum". 8 U.S.C. § 1225(b)(1)(B)(ii). In the meantime, he may not be removed. *Id.*

B.  <u>What Mr. Kiyani *Believes* The Government Is Trying To Do</u>

44.  On February 24, 2025, Mr. Kiyani was given notice that he was being referred for a credible fear interview with an asylum officer - exactly as the statute dictates. See, Exhibit 1.

45.  On February 26, 2025, an interview took place. The result was **not** the statutorily-required credible fear determination. Instead, he received a document generated by ICE, entitled "Convention Against Torture Assessment Notice For Alien(s) Whose Entry Has Been Suspended and/or Restricted Pursuant to INA §§ 212(f) and 212(a) (Rev. 01/31/2025)". Exhibit 2. (hereinafter "CAT Notice")

46.  The CAT Notice (1) acknowledged that Mr. Kiyani was interviewed by an asylum officer, (2) acknowledged that Mr. Kiyani had "**established** that it would be more likely than not

that [he] will be tortured in the DEMOCRACTIC REPUBLIC OF THE CONGO" (emphasis and caps in original), but (3) did not state what, if anything, the Government intended to do with such a determination, or under what legal authority this interview had taken place.

47.     Mr. Kiyani's immigration counsel immediately highlighted that he had not been afforded the statutorily-required credible fear interview. McLean Dec. § 3. DHS' response relied on an Orwellian turn of doublespeak to assert that, because of an executive order which explicitly only seeks to affect entries "across the southern border",[4] Mr. Kiyani (who entered across the northern border) has no access to his statutory rights. McLean Dec. § 13.

48.     DHS has not responded to further requests for legal clarity - but on the basis of its actions to date, Mr. Kiyani *believes* that it purports to unlawfully detain him under a post-removal-order custody authority (8 U.S.C. § 1231) instead of 8 U.S.C. § 1225(b)(1)(B)(ii) *while his asylum application is being considered*.

III.    DHS APPEARS TO BE SEEKING MR. KIYANI'S REMOVAL (1) ON THE BASIS OF A LEGALLY INVALID REMOVAL ORDER, (2) CONTRARY TO THEIR OWN PROCEDURES AND (3) IN DIRECT VIOLATION OF AN APPLICABLE TRO

49.     DHS has assessed Mr. Kiyani's claim and found that it is "more likely than not that [he] will be tortured in the Democratic Republic Of The Congo". While refusing to provide any documentation, such as an administratively final order of removal, DHS has nevertheless stated that "Mr. Kiyani is being processed for expulsion to a third country". McLean Dec. § 13.

---

[4]    Executive Order Dated Jan 20, 2025, 90 FR 8333, Guaranteeing The States Protection Against Invasion, Section 1 ("[T]he entry into the United States on or after the date of this order of aliens engaged in the invasion **across the southern border** is detrimental to the interests of the United States.  I therefore direct that entry into the United States **of such aliens** be suspended until I issue a finding that the invasion at the **southern border** has ceased." (emphasis added))

50.     DHS has already undertaken efforts to remove - or in its phraseology, 'expel' Mr. Kiyani[5] to third countries without informing him and without affording him any opportunity to assert a claim for relief. *See*, *supra,* at paras 28-32.

51.     Such an act appears to be (1) ultra vires, insofar as it has not served Mr. Kiyani with any valid order of removal, (2) contrary to the administrative process DHS ***itself*** laid out,[6] and (3) precluded by the Temporary Restraining Order in *D.V.D., et al., v. U.S. DEPARTMENT OF HOMELAND SECURITY, et al.*, No. CV 25-10676-BEM, 2025 WL 942948 (D. Mass. Mar. 28, 2025). This states in relevant part that:

> "(2) Defendants, and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are hereby ENJOINED and RESTRAINED from:
>
> […]
>
> b) Removing any individual subject to a final order of removal from the United States to a third country, i.e., a country other than the country designated for removal in immigration proceedings, UNLESS and UNTIL Defendants provide that individual, and their respective immigration counsel, if any, with written notice of the third country to where they may be removed, and UNTIL Defendants provide a meaningful opportunity for that individual to submit an application for CAT protection to the immigration court, and if any such application is filed, UNTIL that individual receives a final agency decision on any such application."

Until and unless the Government provides significantly more due process to Mr. Kiyani, its actions to 'expel' him are prohibited by law.

IV.     8 U.S.C. § 1252 ***PROVIDES*** THE COURT JURISDICTION IN THIS CASE

52.     The Government has a right to execute ***final orders of removal***, and district courts may be stripped of jurisdiction to consider such enforcement. *See, e.g. De Oliveira Jimenez v.*

---

[5]   McLean Dec. § 18.

[6]   McLean Dec. § 16 (Mar 10, 2025 email from DHS stating "we will look into alternative countries of removal, **to which your client may claim fear of removal to**" (emphasis added)) and § 18 (Mar 13, 2025 email from DHS stating that "[h]e will be afforded the chance to make a separate CAT claim for every country that is considered")

*Searls*, No. 22-CV-960 (JLS), 2023 WL 11156340 (W.D.N.Y. Feb. 28, 2023), discussing 8 U.S.C. § 1252(g).

53.     But a related statutory section explicitly **_grants_** statutory authority for this Court to review (1) "whether the petitioner was ordered removed under" the expedited removal statute [7] (Mr. Kiyani cannot have lawfully been so ordered if DHS did not comply with its requirements) and (2) whether he is "entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.", *id.,* (relating to requests for asylum - which, as explained above, he was not provided an opportunity to do).

54.     As a result, the jurisdiction-stripping provisions do not bar Mr. Kiyani's petition. Even if they do, as stated above, Mr. Kiyani has a right to habeas relief under the Suspension Clause - **notwithstanding** these statutory provisions, because he seeks relief in its ancient form: to be brought before the court and have the legality of his detention tested. See generally, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117, 140 S. Ct. 1959, 1969, 207 L. Ed. 2d 427 (2020). It is immaterial whether the government may be able to detain him under *some other* authority in the future: what matters is the Government must state with particularity the basis upon which they purport to hold him, and prove it is lawful.

**CLAIMS FOR RELIEF**

**COUNT 1: PETITION FOR WRIT OF HABEAS CORPUS TO ESTABLISH WHETHER MR. KIYANI'S DETENTION IS LAWFUL**

55.     Mr. Kiyani re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein, and does so for all additional counts.

---

[7]   8 U.S.C. § 1252(e)(2)(B)

56.     The Respondents have provided nonsensical and contradictory information regarding the legal basis upon which they purport to detain Mr. Kiyani. On that basis alone, he is entitled to habeas relief (whether pursuant to his statutory right or the suspension clause of the constitution). *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117, 140 S. Ct. 1959, 1969, 207 L. Ed. 2d 427 (2020) ("Habeas, […] is the appropriate remedy to ascertain ... whether any person is rightfully in confinement or not." (internal citations omitted)).

**COUNT 2: SUBSTANTIVE AND PROCEDURAL DUE PROCESS REQUIRES A STAY OF REMOVAL UNTIL THE GOVERNMENT PROVES IT HAS PROVIDED MR. KIYANI WITH THE PROCEDURAL RIGHTS HE IS DUE UNDER THE STATUTE AND REGULATIONS**

57.     Mr. Kiyani re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

58.     Deporting Mr. Kiyani under an invalid order of removal - i.e. in violation of the statutory rights bestowed upon him by congress - violates his substantive and procedural due process rights. A stay of removal will ensure that he is able to access the process he is due. Jurisdiction to consider this question is provided by 8 U.S.C. § 1252(e)(2) and the Court has power to restrain his movement out of the district pursuant to the All Writs Act.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that the Court grant the following relief:

(1)    Assume jurisdiction over this matter;

(2)    Prevent the Petitioner's removal outside of this judicial district;

(3)    Issue a temporary stay of Petitioner's removal until this action is decided;

(4)    Grant the Writ of Habeas Corpus and;

(5)   Fashion such additional relief as is necessary and appropriate, including declaratory relief or other interim relief necessary to vindicate Petitioners' rights under U.S. and international law

Dated:  April 2, 2025                              /s/ Daniel E. Jackson

                                                   _____
                                                   Daniel E. Jackson
                                                   *(Currently) Pro Bono Attorney for Petitioner*
                                                   1669 Indian Falls Road,
                                                   Corfu NY 14036
                                                   Email: dejackson@outlook.com
                                                   Tel: 617-372-2909


                                                   /S/ Siana McLean

                                                   _____
                                                   Siana McLean, Esq.
                                                   *Immigration Counsel for Petitioner*

                                                   Partner, Richards and Jurusik
                                                   5 Niagara Square, Buffalo, NY 14202
                                                   U.S. Office: 716-970-4007
                                                   Canadian Office: 647-360-6224
                                                   Fax: 716-322-5619
                                                   Email: siana@rjimmigrationlaw.com

**VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have discussed with the Petitioner's immigration attorney, Siana McLean the events described in this Petition. On the basis of those discussions, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated:  April 2, 2025                                      /s/ Daniel E. Jackson

                                                        _____

                                                        Daniel E. Jackson
                                                        *(Currently) Pro Bono Attorney for Petitioner*
                                                        1669 Indian Falls Road,
                                                        Corfu NY 14036
                                                        Email: dejackson@outlook.com
                                                        Tel: 617-372-2909

File No. _218 045 434_

## Information About Credible Fear Interview

You have been placed in expedited removal proceedings because the U.S. Department of Homeland Security (DHS) believes that you may not have the right to stay in the United States. You have also indicated that you intend to apply for asylum, you fear persecution or torture, or you fear returning to your country of nationality or designated country of removal. This notice explains what will happen while the U.S. Government is considering your case, what rights you have, and what may happen to you as a result of statements you make.

## PLEASE READ THIS NOTICE CAREFULLY.

### What is a Credible Fear Interview?

Before DHS can remove you, DHS must interview you to determine if you have a fear of persecution or torture that the U.S. Government needs to consider further. A specially trained USCIS asylum officer will interview you. The credible fear interview is not a formal asylum or withholding of removal hearing or interview. The credible fear interview is a screening to determine if you are eligible for a hearing before an immigration judge or an Asylum Merits Interview with a USCIS asylum officer.

You may be detained both before and after the credible fear interview if DHS determines that it is appropriate. The interview will occur no earlier than 24-hours after you receive and acknowledge receipt of this form.

### What Happens At Your Credible Fear Interview

At your credible fear interview, you will have an opportunity to discuss your background and experiences in your country and any other country where you fear harm and explain to the USCIS asylum officer the reasons you are pursuing an asylum claim. The officer will take written notes. This may be your only opportunity to provide information about your claim, so it is very important that you tell the USCIS asylum officer about any harm you may have suffered in the past and any harm you fear in the future. You also may be asked about conditions in your country. **To demonstrate a credible fear of persecution or torture, you must show the officer that you have a credible fear of being persecuted because of your race, religion, nationality, membership in a particular social group, or political opinion, or a credible fear of being tortured in your country.**

You may request a female or male USCIS asylum officer, if this would make it easier for you to speak about information that is very personal or difficult to discuss. You also have the right to speak with the USCIS asylum officer separately from your family.

It is very important that you:

- **Tell the truth during your credible fear interview.** Your statements may be used in this or in any future immigration case.

- **Tell the officer any reasons why you fear returning to your home country or designated country of removal.** U.S. law has strict rules to prevent the government from telling others about what you say in your credible fear interview. For example, the U.S. Government will not disclose to your government any information that you provide, except in exceptional circumstances.

### Possible Use for Asylum Application

It is also possible that the record from your credible fear interview may be considered your asylum application if you are found to have a credible fear of persecution or torture and are scheduled and appear for an Asylum Merits Interview with a USCIS asylum officer.

Form M-444 (Rev. 5/10/2023)

Case 6:25-cv-00880-MAV    Document 81-1    Filed 04/02/25    Page 23 of 35

File No. _____

## Whom You May Consult

While you wait for your credible fear interview, you may use this time to prepare and consult with a person of your choice as long as it does not unreasonably delay the interview process. The U.S. Government does not provide you with an attorney or representative, but you may choose to hire an attorney or representative at your expense. You may have a consultant of your choice with you at your interview or participate by telephone.

If you need additional time before your credible fear interview to contact someone, inform a DHS officer about your circumstances and explain the reason you need more time. In order to avoid unreasonably delaying the process, you will need to demonstrate that extraordinary circumstances necessitate that your credible fear interview be delayed or rescheduled. USCIS will decide whether your circumstances merit providing you with additional time. You may also request to have the interview earlier if you are prepared to discuss your case immediately.

A list of representatives who may be able to speak to you for free is attached to this notice. Representatives of the United Nations High Commissioner for Refugees (UNHCR) also may be able to assist you with information regarding the credible fear process:

United Nations High Commissioner for Refugees
1800 Massachusetts Avenue N.W., Suite 500, Washington, D.C. 20036
*Telephone*: 202-296-5191 *Email*: usawa@unhcr.org *Web site*: www.unhcr.org

You may call UNHCR toll-free by dialing #566 or 1-888-272-1913 on Mondays, Wednesdays, and Fridays, 2 p.m. - 5 p.m. (Eastern Time).

If you want to call someone, ask a DHS officer for assistance. You may also use the telephone while you are in detention to call a relative, representative, attorney, or friend in the United States. You or the person you call must pay for the phone call, if charges apply.

## Interpreters

If you do not speak English well or if you want to be interviewed in a language of your choosing, DHS will provide an interpreter for the interview. The interpreter will be sworn to keep the information you discuss confidential. You may:

- Request another interpreter if the interpreter is not interpreting correctly or you do not feel comfortable with the interpreter.

- Request a female or male interpreter, if this would make it easier for you to speak about information that is very personal or difficult to discuss. DHS will provide them if they are available.

## Biographic and biometric checks

Applicants for asylum are subject to biographic and biometric checks of all appropriate records and other databases. USCIS may use your biometrics that were collected by DHS, including biometrics collected by U.S. Customs and Border Protection (CBP) or U.S. Immigration and Customs Enforcement (ICE), to check criminal history records, verify identity, determine eligibility, or any purpose authorized by the Immigration and Nationality Act. The privacy notices in this document provide information about the collection and use of this information.

## After Your Credible Fear Interview

After your credible fear interview, the USCIS asylum officer will make a determination on your initial screening case. If the asylum officer determines that you have a credible fear of persecution or torture, you will either

Form M-444 (Rev. 5/10/2023)

File No. _____

receive a charging document for a hearing in immigration court or you will be scheduled for an Asylum Merits Interview with a USCIS asylum officer. At the immigration court hearing or USCIS Asylum Merits Interview, the immigration judge or asylum officer will determine whether to grant you asylum or whether you are eligible for other protection from removal. You will receive information about the date, time, and location of this hearing or interview.

If the USCIS asylum officer determines that you do not have a credible fear of persecution or torture, you may ask to have an immigration judge review the asylum officer's negative determination. If you decline this review, you may be removed from the United States.

## Immigration Judge Review of a Negative Credible Fear Determination

If you request that an immigration judge review the USCIS asylum officer's negative credible fear determination, the immigration judge's review will usually happen no later than 7 days from the date that you receive your negative credible fear determination. The review will be in person, by telephone, or by video connection. You may consult with a person of your choice before the review as long as it does not cause unreasonable delay. You will receive a copy of the USCIS asylum officer's determination before the immigration judge review. If any of the information is incorrect, you should tell the immigration judge.

At the review, the immigration judge will decide either that:

- You do not have a credible fear of persecution or torture. You may then be removed from the United States.

  OR

- You have a credible fear of persecution or torture, and you are eligible for further proceedings in immigration court or an Asylum Merits Interview with an asylum officer where you can apply for asylum or other protection from removal. At any further proceedings in immigration court or during an Asylum Merits Interview, the immigration judge or USCIS asylum officer will determine whether to grant you asylum or whether you are eligible for other protection from removal. If you are ordered removed, you may not be allowed to reenter the United States for 5 years or longer.

## After a Positive Credible Fear Determination by an Asylum Officer or Immigration Judge

If you receive a charging document for proceedings in immigration court and wish to apply for asylum, you must file Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589 and instructions on where to file the Form can be found at www.uscis.gov/i-589. Failure to file Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to INA § 208(a)(2)(B).

If you receive a document called "Information About Your Asylum Merits Interview," you will receive a notice with the time, date, and location of the Asylum Merits Interview. You will not be required to file a Form I-589 if you are scheduled and appear for an Asylum Merits Interview with a USCIS asylum officer, as the record of the credible fear interview and your credible fear determination will be considered your asylum application.

## DHS Privacy Notice

Authorities: The acquisition, preservation, and exchange of information in connection with a credible fear interview and any potential associated asylum adjudication is collected under the Immigration and Nationality Act sections 103, 208, 235 and 241(b)(3), and 8 CFR sections 103, 208, 235, and 1208.

Purpose: The primary purpose for providing the requested information is to determine eligibility for asylum in the United States or other protection from removal.

Form M-444 (Rev. 5/10/2023)

File No. _____

Disclosure: The information you provide is voluntary. However, failure to provide the requested information, and any requested evidence, may delay a final decision or result in the denial of a benefit request.

Routine Uses: DHS may share the information you provide with other federal, state, local, and foreign government agencies and authorized organizations. DHS follows approved routine uses described in the associated published system of records notices [DHS/USCIS-001 – Alien File, Index, and National File Tracking, DHS/USCIS-010 – Asylum Information and Pre-Screening and DHS/USCIS-018 Immigration Biometric and Background Check] and the published privacy impact assessment [DHS/USCIS/PIA-027 USCIS Asylum Division which you can find at www.dhs.gov/ along with EOIR-001, Records Management Information System, 69 Fed. Reg 26, 179 (May 11, 2004) or its successors. DHS may also share the information as appropriate, for law enforcement purposes or in the interest of national security.

**FBI Privacy Notice**

USCIS may use your biometrics to check the criminal history records of the FBI, for identity verification, to determine eligibility, to create immigration documents (e.g., Green Card, Employment Authorization Document, etc.), or any purpose authorized by the Immigration and Nationality Act. You may obtain a copy of your own FBI record using the procedures outlined within Title 28 C.F.R., Section 16.32. For information, please visit: https://www.fbi.gov/services/cjis/identity-history-summary-checks. For Privacy Act information, please visit https://www.fbi.gov/services/cjis/compact-council/privacy-act-statement.

**Noncitizen Acknowledgment of Receipt**

I acknowledge that I have been given notice concerning my credible fear interview. I understand that I may consult with anyone I choose before the interview as long as it does not unreasonably delay the process and is at no expense to the U.S. Government.

_Signature_                    02/24/2025
Noncitizen Signature          Date of Signature (mm/dd/yyyy)

**Interpreter Certification**

Interpreter was placed under oath and read the form in entirety to the noncitizen in the <u>HINDI</u> language. The noncitizen confirmed that they understood every instruction on the form.

Telephonic interpreter used

_____
Service/ID if available

OR

_____                _____
Interpreter Signature        Date of Signature (mm/dd/yyyy)

Form M-444 (Rev. 5/10/2023)

 **U.S. Citizenship and Immigration Services**

| Applicant: **ACHILLE KAMBALE KIYANI** A #: **218045434** | Officer: **Irina Chikerinets** Date of Determination: **Feb 26, 2025** |

## Convention Against Torture Assessment Notice For Alien(s) Whose Entry Has Been Suspended and/or Restricted Pursuant to INA §§ 212(f) and 212(a) (Rev. 01/31/2025)

A Number: **218045434**
Last Name: **KIYANI**                    First Name: **ACHILLE**
Interview Date: **2025-02-26**        Determination Date: **2025-02-26**

You were interviewed by a DHS asylum officer to determine whether it is more likely than not that you will be tortured in **DEMOCRATIC REPUBLIC OF THE CONGO**. The assessment made by the DHS asylum officer, indicated below, will be considered by DHS in determining whether you may be sent to **DEMOCRATIC REPUBLIC OF THE CONGO**. DHS will provide you with additional information regarding how you will be processed.

☒ You **established** it is more likely than not that you will be tortured in **DEMOCRATIC REPUBLIC OF THE CONGO**

☐ You **did not establish** it is more likely than not that you will be tortured in **DEMOCRATIC REPUBLIC OF THE CONGO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

**MR. ACHILLE KIYANI,**
                              *Petitioner*,

          v.

**MR. JOSEPH FREDEN,**
          **in his official capacity as Deputy**
          **Field Office Director, Buffalo**
          **Field Office, U.S. Immigration &**
          **Customs Enforcement;**


                              *Respondent.*

Civil Action No. 25-cv-_____




**VERIFIED PETITION FOR**
**WRIT OF HABEAS CORPUS**
**AND INCORPORATED**
**MEMORANDUM OF LAW**



*Oral Argument Requested*


## DECLARATION OF SIANA MCLEAN, ESQ.
## (MR. KIYANI'S IMMIGRATION ATTORNEY)

I, Siana McLean, Esq. declare under penalty of perjury that the following is true and correct.

1.      I am an attorney who represents Mr. Kiyani in immigration matters. During the course of this representation, I have had several interactions with representatives of the Department of Homeland Security ("DHS") and its agency, the Bureau of Immigration and Customs Enforcement ("ICE"). Below, I have excerpted all relevant emails which I have exchanged with said representatives about Mr. Kiyani's current case.

2.      For ease of reading, I have omitted signature blocks and meta data, and have reproduced the email exchanges in chronological order.

3.      Email from Siana McLean (using email siana@rjimmigrationlaw.com[1]) to the duty officer email inbox of the ICE Field office in Batavia New York at BTV-dutyofficer@ice.dhs.gov (hereinafter "Batavia ICE") on **Mon, Mar 3, 2025, 3:14 PM**:

> Good afternoon,
>
> I am writing with respect to the request for a credible fear interview for detainee Achille Kiyani.
>
> Mr. Kiyani was supposed to be given a credible fear interview according to the attached notice. He seems to have been interviewed but the notice he received indicates he was only considered for a credible fear of torture and not persecution as required by the Credible Fear Process. If this message is to be addressed by the asylum office, please forward this message to them. I am requesting that a full credible fear interview be provided to this detainee and not just consideration under the Convention Against Torture. I have attached a fully executed G-28 and the notices he received. Please provide clarity as to the process used in this matter.

---

[1]   All emails from or to Siana McLean used this email address.

Thanks,

4.   Email from Siana McLean to Batavia ICE on **Wed, Mar 5, 2025 at 7:19AM**:

I am following up on this matter. This detainee should have been granted a full credible fear interview irrespective of ina212(f). This section does not preclude him getting protection under INA 208. Please provide a response or advise how this can be sent to the Asylum office for a response.

Thank you.

5.   Email from Officer McDonald, Deportation Officer, Detained Unit, Buffalo Field Office ("DO McDonald") from the BTV-dutyofficer@ice.dhs.gov email address to Siana McLean on **Wed, Mar 5, 2025, 8:00 AM**

Good morning,

We are currently waiting on response from Canada.

Thank You,

6.   Email from Siana McLean to Batavia ICE on **Wed, Mar 5, 2025 at 8:01 AM**:

Canada? What exactly do you mean by that. He re-entered the US and seems to have gone through some type of Credible Fear process so exactly what are you waiting to hear back from Canada about? He doesn't have any citizenship in Canada although I am aware he entered the USA from there.

7.   Email from DO McDonald from the BTV-dutyofficer@ice.dhs.gov email address to Siana McLean on **Wed, Mar 5, 2025, 8:06 AM**

He illegally entered the U.S. from Canada. Under the cred fear process we are reaching out to them to see if they will accept him back.

Thank You,

8.      Email from Siana McLean to Batavia ICE on **Wed, Mar 5, 2025 at 8:14 AM**:

That seems to be a departure from the credible fear process since he has already been determined to have a credible fear, he should be placed into proceedings not attempting to be sent back to a third country. Please provide me the cite to the new process that indicates a person who has been found to have a credible fear is first attempted to return to a third country before being allowed to seek protection in the USA.

9.      Email from Andrew Oliveri - a Supervisory Detention and Deportation Officer at the Batavia Sub-Officer of ICE ("SDDO"), using the email address BTV-dutyofficer@ice.dhs.gov[2] to Siana McLean on **Wed, Mar 5, 2025 at 1:57 PM**:

Good afternoon Attorney McLean,

Mr. Kiyani was given a Convention Against Torture Assessment by USCIS as an alien whose entry has been suspended and/or restricted pursuant to INA 212(f) and 215(a). USCIS determined that Mr. Kiyani established that it is more likely than not that he will be tortured in The Congo. Mr. Kiyani is being processed for expulsion to a third country and will not be placed in removal proceedings at this time.

10.     Email from Siana McLean to Batavia ICE on **Wed, Mar 5, 2025 at 2:06PM**:

Thank you for your email. How exactly does this new policy relate to INA Section 208? The new executive order does not say that a person is no longer allowed to establish fear under Section 208. I believe that the executive order is being misapplied here. He should not be sent to a third country when he hasn't been given an opportunity to establish fear under section 208. I believe the executive order is explicit that the order cannot contravene section 208.

11.     Email from Siana McLean to Batavia ICE on **Wed, Mar 5, 2025 at 2:33PM**:

Additionally, the executive order in questions restricts certain foreign nationals crossing the southern border and Mr.Kiyani did not cross the southern border: I

---

2    All emails from SDDO Andrew Oliveri utilized this email address.

see now the attempted restriction on Section 208 but my position is that this executive order doesn't even apply to Mr. Kiyani as he didn't enter across the southern border. I am respectfully requesting that any attempts to repatriate him to a third country cease and he be properly granted a credible fear interview.

Section 1. Suspension of Entry. I hereby proclaim, pursuant to sections 212(f) and 215(a) of the INA, 8 U.S.C. 1182(f) and 1185(a), that the entry into the United States on or after the date of this order of aliens engaged in the invasion across the **southern border** is detrimental to the interests of the United States. I therefore direct that entry into the United States of such aliens be suspended until I issue a finding that the invasion at the **southern border** has ceased.

Sec. 2. Imposition of Restrictions on Entry for Aliens Invading the United States. I hereby proclaim, pursuant to sections 212(f)and 215(a) of the INA, 8 U.S.C. 1182(f) and 1185(a), that aliens engaged in the invasion across the **southern border** of the United States on or after the date of this proclamation are restricted from invoking provisions of the INA that would permit their continued presence in the United States, including, but not limited to, section 208 of the INA, 8 U.S.C. 1158, until I issue a finding that the invasion at the **southern border** has ceased.[3]

12.    Email from Siana McLean to Batavia ICE on **Thu, Mar 6, 2025 at 6:52 AM:**

I am following up on this matter to also request a copy of the interview notes. I have submitted a fully executed G-28 wit hMr. Kiyani's signature so any Asylum officer notes and decision should be made available to me.

13.    Email from SDDO Andrew Oliveri to Siana McLean on **Thu, Mar 6, 2025 at 10:46 AM**:

Good morning,

The Presidential Proclamation also applies to the northern border. As a result, Mr. Kiyani will continue to be processed for expulsion to a third country.

Thank you,

---

[3]   Emphasis in original email.

14.   Email from Siana McLean to Batavia ICE on **Thu, Mar 6, 2025 at 10:55 AM**:

Where is the cite to the actual law that says that this executive order applies at the Northern Border? Also how are you arranging for expulsion to a third country that he has no citizenship in? What statute is the basis for that? He has not been given a chance to apply for protection under the Convention Against Torture. Please provide me copies of the transcript of his interview and also copies of whatever documents you had him sign to make requests to other countries to accept him. By what authority are you seeking expulsion to countries he has no right to go to?


15.   Email from Siana McLean to Batavia ICE on **Mon, Mar 10, 2025 at 7:58AM:**

Good morning,

I am following up on this matter and requesting the status of Mr. Kiyani's detention. I am also repeating my request for a copy of the transcript of his "interview". He was advised he was getting a credible fear interview as per the regulations and then was given something other than a credible fear interview. Please provide a response to this email with the transcript of this interview.

Furthermore please provide the basis for your determination that the executive order applies at the Northern border when the executive order itself makes no mention of the northern border.

Thank you for providing a response and explaining all the ways in which due process has been ensured in this matter.

This is a person who has suffered abject persecution and torture in his home country. He has no ties to another country and he has a USC fiancee and two US citizen children. Please advise how you plan to ensure that he is not subject to more atrocious treatment including not being subjected to arbitrarily being sent across the world.

Looking forward to your prompt response on this issue.

We continue to request that he be granted a proper hearing in front of an immigration judge.

Thank you.

16.    Email from Officer Michael Badaszewski, Deportation Officer, Detained Docket, Buffalo Field Office, Batavia Sub-Office ("DO Badaszewski") from the BTV-dutyofficer@ice.dhs.gov email address to Siana McLean on **Mon, Mar 10, 2025, 8:08 AM:**

Good morning,

Your request was previously answered. As your client received a positive adjudication to Convention Against Torture (CAT), we are requesting Canada look in to the possibility of his return back to Canada (from which he was encountered). Upon their decision, we will look into alternative countries of removal, to which your client may claim fear of removal to. I have attached USCIS's CAT decision as requested. Your client is not eligible to appear in front of an Immigration Judge. I hope this clarifies things.

17.    Email from Siana McLean to Batavia ICE on **Wed, Mar 12, 2025 at 5:07PM:**

Good afternoon,

Is this particular detainee the subject of an expedited removal order? If so has this been served on him? Since he has established a credible fear of persecution and torture, the expedited order would usually be vacated. Please advise as to the current status. Please provide a copy of any orders issued to this detainee.

18.    Email from DO Badaszewski from the BTV-dutyofficer@ice.dhs.gov email address to Siana McLean on **Mon, Mar 13, 2025, 15:55PM:**

Good afternoon,

I apologize for the delay in response. Your client was served an executed Form I-860. As a 212(f) case he is no longer under removal but expulsion from the United States. Thus, the expulsion still remains in effect and he is only given a CAT interview for purposes of removal. He is not subject to an IJ review of this fear finding. Seeing as he was given positive CAT to Congo, we will continue to look for other countries for removal. He will be afforded the chance to make a separate CAT claim for every country that is considered. I am currently awaiting a decision from Canada at this time. I hope this satisfies your inquiry. Any further inquires will reference our past responses.

Much thanks,

19.    Email from Siana McLean to Batavia ICE on **Fri, Mar 28, 2025 at 9:44AM:**

I have been advised that my client was served a document with respect to the continued attempts to send him to third countries he has no ties to. Please provide a copy of the document that was served on my client.


20.    Email from Siana McLean to Batavia ICE on **Tue, Apr 1, 2025 at 2:52PM:**

Good afternoon,

I am following up with this email. Please advise as to my question and also to confirm that the client remains detained at the facility.

Thank you.


Dated:  April 2, 2025

Signed:

_____
Siana McLean, Esq.
Partner, Richards and Jurusik

5 Niagara Square, Buffalo, NY 14202
U.S. Office: 716-970-4007
Canadian Office: 647-360-6224
Fax: 716-322-5619
Email: siana@rjimmigrationlaw.com

**U.S. Department of Homeland Security**                    **Notice and Order of Expedited Removal**

## DETERMINATION OF INADMISSIBILITY

**Event Number:**

File No: _____

Date: _____

In the Matter of: _____

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) 212(a) ☐ (6)(C)(i); ☐ (6)(C)(ii); ☐ (7)(A)(i)(I); ☐ (7)(A)(i)(II); ☐ (7)(B)(i)(I); and/or ☐ (7)(B)(i)(II) of the Act, as amended, and therefore are subject to removal, in that:

_____          _____
Name and title of immigration officer (Print)               Signature of immigration officer

## ORDER OF REMOVAL
## UNDER SECTION 235(b)(1) OF THE ACT

Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States.

_____          _____
Name and title of immigration officer (Print)               Signature of immigration officer

_____          _____
Name and title of supervisor (Print)                         Signature of supervisor, if available

☐ Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty).

### CERTIFICATE OF SERVICE

I personally served the original of this notice upon the above-named person on _____
                                                                                                    (Date)
_____
Signature of immigration officer

Form I-860 (Rev. 08/01/07)